# United States District Court

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL - 8 2008

MATTHEW J. DYKMAN
CLERK

DISTRICT OF New Mexico

UNITED STATES OF AMERICA
V.
Richard MCKENZIE

## CRIMINAL COMPLAINT

CASE NUMBER: 08mJ1601

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or Monday, July 7, 2008 in Bernalillo County, in the District of New Mexico defendant(s) did, (Track Statutory Language of Offense)

Possession with Intent to Distribute over 500 grams of a mixture containing Cocaine

in violation of Title 21 United States Code, 841 (a) (1) , (b) (1) (B)

I further state that I am a(n) Special Agent and that this complaint is based on the following
Official Title
facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part    ☒ Yes   ☐ No

Special Agent Mark D. Hyland
Signature of Complainant

Sworn to before me, and subscribed in my presence,

Tuesday, July 8, 2008                at Albuquerque, New Mexico
Date                                  City and State

U. S. Magistrate Judge Don J. Svet
Name and Title of Judicial Officer    Signature of Judicial

2

On Monday, July 7, 2008, at approximately 12:30PM, Affiant and DEA Task Force Officer (TFO) Stephen Surprenant de Garcia were working the eastbound Amtrak Train Number 4, The Southwest Chief.

Before the arrival of the Amtrak train, Affiant reviewed an Amtrak reservation for a Deluxe Sleeper passenger named Richard MCKENZIE. The reservation indicated one-way travel from Flagstaff, Arizona to New York, New York, via Chicago, Illinois and Washington, D. C. The ticket was purchased the day of travel, Monday, July 7, 2008. The third-party, credit card purchase cost a total of $1,836.00. MCKENZIE had Deluxe Sleeper A in Sleeper Car 431.

Affiant and TFO Garcia met an individual who was subsequently identified as Richard MCKENZIE who was smoking a cigarette outside of Amtrak Sleeper Car 431. Affiant identified himself as a police officer and displayed his credentials and badge and returned them to his left rear pocket. MCKENZIE gave Affiant permission to speak with Affiant. Affiant asked for MCKENZIES' ticket and he responded that it was in MCKENZIES' room. Affiant followed MCKENZIE to Deluxe Sleeper A. Affiant remained outside the room and was not blocking the doorway. MCKENZIE provided an Amtrak ticket in his name indicating travel from Flagstaff, Arizona to a final destination of New York, New York. Affiant immediately returned the tickets back to MCKENZIE.

Affiant had asked MCKENZIE why was MCKENZIE traveling to which MCKENZIE answered he was returning from a family reunion in Flagstaff, Arizona. Affiant asked MCKENZIE if he was enjoying the trip. MCKENZIE stated he does not like to fly and that was why he was on Amtrak.

Affiant asked if MCKENZIE had any luggage with him. MCKENZIE stated yes he had two (2) carry-on bags. Affiant asked for consent to search both bags, MCKENZIE gave consent to search to Affiant. Affiant then asked for permission to enter Deluxe Sleeper A and MCKENZIE provided permission.

Affiant began searching a brown Louis Vuitton bag. Affiant observed clothing and toiletries and on the bottom was one unopened (1) Great Value Fruit Spins Cereal Box. The Affiant removed the Great Value Fruit Spins Cereal Box and could hear the sound of loose cereal but the Great Value Fruit Spins Cereal Box was heavier than the listed weight of 558 grams. Affiant could feel that there was a heavy center weight inside the cereal box. Affiant asked why MCKENZIE had a cereal box in his bag. MCKENZIE stated that he liked cereal.

Affiant observed MCKENZIES' speech to increase in speed. MCKENZIE removed his second bag from a shelf in the sleeper car. This black, Forecast-brand suitcase had additional clothing and two (2) additional unopened boxes of cereal; Great Value-brand Apple Express and Kellogg's-brand Corn Pops.

3

Affiant also observed a US Airways Checked Baggage tag on the Forecast-brand suitcase. Affiant also observed that the U. S. Airways travel was to Phoenix, Arizona on Thursday, July 3, 2008 in the name of MCKENZIE.

Affiant specifically asked for consent to search the Great Value-brand Fruit Spins Cereal Box and MCKENZIE denied Affiant permission. MCKENZIE wanted to return to the outside of the Amtrak car to smoke another cigarette. Affiant followed MCKENZIE to the outside platform. TFO Garcia went to get his Certified Drug Detection Canine Sasja.

Affiant continued to talk to MCKENZIE about his trip and MCKENZIE would not allow TFO Garcia's Canine permission to sniff the three (3) aforementioned unopened cereal boxes.

Affiant and TFO Garcia attempted to detain MCKENZIE, who then fled back to MCKENZIES' Deluxe Sleeper Car A and locked the door. The Amtrak Conductor was near-by and there was not any special key to unlock a sleeper car door.

MCKENZIE refused to open the locked door. Moments later, another Amtrak employee came to the hallway and stated someone had kicked-out a window and was now fleeing eastbound towards Broadway Boulevard, SE. Affiant and TFO Garcia could see MCKENZIE limping beyond the Amtrak Train Station property and had jumped a chain-linked fence topped with razor-wire. TFO Garcia went back to his vehicle and detained MCKENZIE on the north side of the building.

Affiant worked with Amtrak personnel for several minutes until the locked sleeper car door was finally opened. Affiant removed the three (3) aforementioned unopened cereal boxes and all of MCKENZIES' personal property.

Affiant met TFO Garcia and emergency personnel at the location where MCKENZIE was taken into custody. MCKENZIE had severely injured his right ankle and was transported to Lovelace Hospital Downtown location. MCKENZIE was release by the hospital but remained in custody of the DEA.

Affiant and TFO Garcia returned to the DEA Albuquerque Office and TFO Garcia presented the Great Values-brand Apple Express Cereal Box, Great Value-brand Fruit Spins Cereal Box and the Kellogg's-brand Corn Pops Cereal Box to Certified Canine Sasja. TFO Garcia and Canine Sasja have been trained and certified through the U. S. Department of Homeland Security/Border Patrol National Canine Facility in January 2007. The latest certification was December 2007 for cocaine, heroin, marijuana and methamphetamine. Canine Sasja has proven reliable in previous investigations.

TFO Garcia relayed to Affiant that Canine Sasja had alerted to all three (3) aforementioned cereal boxes.

4

Affiant prepared a federal search warrant that was signed by U. S. Magistrate Judge Alan C. Torgerson. At approximately 7:50 PM, Affiant and TFO Garcia executed the search warrant and obtained three (3) brown taped rectangular bundles from each of the aforementioned cereal boxes. Affiant tested the white powder inside one (1) of the bundles and obtained a positive reaction for cocaine. The approximate weight of the three (3) bundles was 3.45 gKgs (7.6 pounds).

Once MCKENIZE was released from the hospital he was processed at the DEA Albuquerque Office. At approximately 10:20 PM, Affiant and TFO Garcia advised MCKENZIE of his Miranda Warnings from a DEA-13A Card. MCKENZIE did not want to make a statement and the interview was terminated.

I swear that this information is true and correct to the best of my knowledge.

AFFIANT FURTHER SAYETH NOT:

Mark D. Hyland
Special Agent
Drug Enforcement Administration
Albuquerque District Office

Sworn before me on this 8th day of July 2008.

Don J. Svet
United States Magistrate Judge
District of New Mexico
Albuquerque, New Mexico