IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                   CR No. 08-1669 JB

RICHARD ANTHONY MCKENZIE,

        Defendant.

## MOTION TO SUPPRESS EVIDENCE WITH SUPPORTING AUTHORITIES

        COMES NOW the Defendant, Richard Anthony McKenzie, through his attorney, Alonzo J. Padilla, Assistant Federal Public Defender and moves this court for an order suppressing evidence found in his luggage on July 7, 2008, such evidence consisting of approximately 3.5 kilograms of cocaine. In support of this request, Counsel for Mr. McKenzie sets forth the following facts and legal authorities to support counsel's assertion that the search of Mr. McKenzie's luggage was not supported by either probable cause or a reasonable suspicion that it contained illegal contraband. Additional evidence and testimony in support of this request to suppress such evidence will be developed at the time a hearing is conducted by the Court.

        1.        On July 7, 2008, Mr. McKenzie was a passenger on an eastbound Amtrak train. After the Amtrak train stopped in Albuquerque, Mr. McKenzie left the train and went to the platform to smoke a cigarette. While on the platform and away from the private quarters of his sleeper compartment, he was approached by law enforcement officers who questioned

him about his destination. They also requested that they be allowed to view his ticket. Not feeling he had any choice but to comply with the officers request and not having been advised that he had a right to refuse to cooperate, Mr. McKenzie returned to his sleeper compartment to obtain his ticket to show to the officers. After showing the ticket to the officers and his identification to establish that the ticket matched his true identity, the officers then asked Mr. McKenzie if they could search his luggage to determine if he was transporting any illegal substances.

    2.    Not knowing that he could refuse to give consent, Mr. McKenzie allowed the officers to view the contents of his luggage. During this encounter, the officer noticed boxes of cereal in the luggage which he suspected might contain an illegal substance. When asked whether he would allow a canine to sniff the suspected cereal boxes, Mr. McKenzie refused such request, left his sleeping compartment and returned to the platform where he had previously been encountered by law enforcement officers to again smoke a cigarette. The officers followed him outside where a discussion ensued regarding the officers request that they be allowed to check his baggage for any type of illegal substances. Mr. McKenzie advised the officers that he was afraid of dogs and would not allow the canine to sniff his baggage. Shortly thereafter, Mr. McKenzie returned to his sleeping compartment, locked the door and refused to discuss the matter any further. Failing to obtain a pass key to get into the sleeper, attempts were being made to open the locked door when the officers were advised that Mr. McKenzie had jumped from the train, where he was last seen leaving the area and heading in an easterly direction. The officers apprehended Mr. McKenzie a short time later.

A subsequent search of his luggage, after a warrant was obtained, revealed the presence of approximately 3 ½ kilos of cocaine.

3. Mr. McKenzie alleges that the officers had no reasonable suspicion or probable cause to believe he was transporting any illegal substances when they approached him on the platform at the train station to question him regarding his travel destination. Although the officer had received information that Mr. McKenzie had paid for a sleeper compartment that was costing in excess of $1,800 for his trip from Flagstaff, Arizona to Washington, D.C., the ticket was not purchased with cash on the day of travel, but was purchased at least one week prior to travel with a credit card. Mr. McKenzie further alleges that he was essentially in custody as his freedom of movement was restricted when he was asked to go back to his sleeper compartment to retrieve his ticket as demanded by law enforcement officers. During this encounter Mr. McKenzie was not advised of his right to refuse to cooperate with the officers nor had the officers articulated any reasons why they suspected he might be transporting illegal substances. Furthermore, Mr. McKenzie felt he had no alternative but to allow the officers to check his luggage even though the officers did not have any reasonable suspicion at that point to believe he was violating any laws of this country.

4. In determining whether reasonable suspicion existed in this case to support the officer's conduct, the Court must consider the totality of circumstances to determine if law enforcement officers had a "minimal level of objective justification," something more than

an "incoherent and unparticularize suspicion or hunch". *United States v. Place*, 462 U.S. 696, 706 (1983).

5. The Tenth Circuit has extensively discussed issues arising from encounters occurring on Amtrak trains. In *United States v. Ward,* 961 F.2d 1526, 1528-30 (10th Cir. 1992), the Tenth Circuit found that officers did not have the necessary reasonable suspicion to detain passengers suspected of narcotic trafficking. Before detaining the Defendant, the officers in *Ward* had been informed by historically reliable information that Defendant was utilizing an alias while traveling alone, paid cash for a one way ticket and reserved the biggest private room on the train. Furthermore, in *United States v. Bloom*, 975 F.2d 1447, 1454-55 (10th Cir. 1992), the Tenth Circuit found that officers did not have the necessary reasonable suspicion to detain a train passenger suspected of narcotics trafficking. Before detaining the defendant, the officers knew that the defendant: 1) utilized his real name while traveling alone; 2) reserved a private train compartment or sleeper; 3) paid cash for a one-way ticket; 4) kept luggage of type utilized by narcotic smugglers in the private compartment; 5) asked the train attendant about a law enforcement officers presence on the train; and 6) appeared excessively nervous and excited. In *United States v. Hall*, 978 F.2d 616, 621 (10th Cir. 1992) the Tenth Circuit also held that officers did not have necessary reasonable suspicion to detain a train passenger's suitcase. Before keeping the suitcase for further investigation, the officers knew that the defendant: 1) boarded the train in Flagstaff, Arizona and not her home town of Reno, Nevada; 2) utilized her real name while traveling from

Arizona to Harrisburg, Pennsylvania; 3) was traveling alone in a private room; 4) paid cash for a one-way ticket; 5) provided a California travel agency number for call back purposes; 6) had a suitcase that was particularly heavy; and 7) appeared nervous when conversing with officers. In coming to the conclusion that reasonable suspicion did not exist, the Tenth Circuit noted that "none of the factors in this case, except Defendant's nervousness, are objectively suspicious. Instead, these factors are entirely consistent with innocent travel and therefore raise only a minimal degree of suspicion." 978 U.S. at 621.

      6.     In the case before this court, the law enforcement officers had no reasonable suspicion to believe that Mr. McKenzie was involved in any illegal conduct when they approached him on the platform where he was smoking a cigarette. They had received information regarding the purchase of his ticket, which was paid for with a credit card days before his travel, unlike the defendants in *Ward, Bloom* and *Hall*, who had all purchased their tickets with cash, on the day of travel. Nonetheless, the officers were anxious to talk to Mr. McKenzie as they felt he met the profile of someone that might be transporting illegal substances. However, there were no other factors that the officer could articulate beyond a hunch they may have had that Mr. McKenzie was a drug courier. Furthermore, Mr. McKenzie felt compelled to allow the officers to enter his sleeper compartment and to search his luggage. However, once the search was going to involve a drug sniffing dog, Mr. McKenzie, who is afraid of dogs, refused to allow his luggage to be further searched and he withdrew the previous consent he may have given the officers. At that point, he left the

5

privacy of his sleeper compartment and returned to the platform adjacent to the Amtrak train to smoke a cigarette. Prior to their initial contact with Mr. McKenzie, law enforcement officers did not have reasonable suspicion, much less probable cause, to believe that Mr. McKenzie was transporting illegal substances. Therefore, any search subsequent to their initial contact with Mr. McKenzie went beyond their investigation of drug trafficking activities. Furthermore, their entry into Mr. McKenzie sleeping compartment to conduct the search of his luggage was not justified by anything other than a vague, inarticulate hunch. Such is not sufficient to sustain the seizure and subsequent search of Mr. McKenzie's luggage.

7. The Fourth Amendment protects people from unreasonable intrusions by the Government into their legitimate expectations of privacy. *See United States v. Place*, 462 U.S. 697, 706-707 (1983). The Supreme Court in the Place decision held that a person possesses a privacy interest in the contents of personal luggage while traveling. 462 U.S. at 707. As it applies to this case, law enforcement officers were required to have, at a minimum, a reasonable suspicion of criminal activity to justify a brief investigative search, (*See*, *Terry vs. Ohio*, 392 U.S. 1 (1968). The officers who initially approached Mr. McKenzie had no reasonable suspicion that Mr. McKenzie might be transporting illegal drugs. If anything, all they were acting upon was a "hunch" that he was a drug courier. Without more, the subsequent seizure and search of his luggage was also improper and should be suppressed as an unjustified intrusion into Mr. McKenzie's expectation of privacy. Nor does the

subsequent actions of Mr. McKenzie in locking the door of his sleeper compartment and unusual departure from the train justify the seizure of his luggage.

8. For the reason set forth above, Counsel requests that the Court set this matter for an evidentiary hearing where testimony and additional authorities will be presented in support of this motion to suppress.

| | |
|---|---|
| I HEREBY CERTIFY THAT on the 14th day of May 2009, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Larry Gomez to be served by electronic means, as more fully reflected on the Notice of Electronic Filing. | Respectfully submitted,<br><br>FEDERAL PUBLIC DEFENDER<br>111 Lomas NW, Suite 501<br>Albuquerque, NM 87102<br>(505) 346-2489 |
| \_\_\_\_/S/\_\_\_\_ | \_\_[Electronically filed]\_\_<br>ALONZO J. PADILLA, AFPD<br>Attorney for Defendant |