## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    No. CR 08-1669 JB

RICHARD ANTHONY MCKENZIE,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Richard Anthony McKenzie's Motion to Compel Production of Witnesses and Documents, filed September 11, 2009 (Doc. 48)("Motion"). The Court held a hearing on December 15, 2009. The primary issue is whether the United States should disclose the identity of an Amtrak ticket agent who sent a facsimile transmission to the Drug Enforcement Administration ("DEA") Agent involved with Amtrak passenger and Defendant Richard Anthony McKenzie's arrest. The Court, after careful review of the record and relevant law, will deny McKenzie's Motion to Compel Production of Witnesses and Documents.

### FACTUAL BACKGROUND

Mark Hyland is the DEA Agent involved in the investigation and subsequent arrest of McKenzie on the charge of possession with intent to distribute over 500 kilograms of cocaine. See Motion ¶ 1, at 1-2. At the August 20, 2009 suppression hearing, Hyland testified that, on the morning of Mr. McKenzie's arrest, he received a document called the Passenger Name Record ("PNR") containing information regarding McKenzie's travel itinerary with Amtrak. See Motion ¶ 2, at 2. In the Memorandum of Understanding ("MOU") between the Amtrak Police Department and the DEA, Amtrak does not agree to provide information to the DEA. See Hearing Transcript

at 147:8-13 (taken August 20, 2009) ("Tr.") (Hyland).[1] Hyland did not have any other communication with the Amtrak ticket agent besides receiving the PNR by facsimile transmission. See Tr. at 116:25-117:11 (Hyland). Hyland further testified that the only reason for going to the train station on that particular day was the information received from the ticket agent, whom the DEA had trained to look for certain characteristics on train reservations that might indicate one or more characteristics of the drug-courier profile. See Motion ¶ 2, at 2.

The PNR for McKenzie was "showing one-way travel from Flagstaff, Arizona to New York City." Tr. at 9:19-21 (Hyland). Hyland testified that Flagstaff is a source city, "where drugs are coordinated and gathered so that they can be further distributed at other points." Tr. at 11:20-12:7 (Hyland). He also testified that New York City is a destination city, "a city that would be receiving wholesale narcotics." Tr. at 12:1-11 (Hyland). Hyland testified that when looking for drug couriers on the train, "we see people traveling one way." Tr. at 18: 6-8 (Hyland). The PNR also indicated that a third party paid for the ticket for a deluxe sleeper room which included all meals. See Tr. at 14:5-6, 16:2-25 (Hyland).

Hyland approached McKenzie on the platform, showed McKenzie his badge and credentials and said: "I [am] a police officer and would [you] be willing to speak with me." Tr. at 21:22-23:17 (Hyland). When asked if McKenzie responded, Hyland stated: "He said yes, he would like to speak with me." Tr. at 23:21 (Hyland). Hyland was carrying a concealed weapon but did not display it to McKenzie. See Tr. at 24:10-15 (Hyland). Hyland asked, in a "conversational tone," if he could speak with McKenzie. Tr. at 24:19 (Hyland).

---

[1]The Court's citations to the transcript of the August 20, 2009 hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Hyland asked McKenzie if McKenzie could get his ticket for Hyland, which McKenzie indicated was back in his room, and McKenzie said "sure." Tr. at 25:23-26:2 (Hyland). Hyland asked McKenzie if he could enter McKenzie's room, and McKenzie told Hyland: "yes, come in." Tr. at 28:20-23 (Hyland). McKenzie consented to Hyland's request to search McKenzie's luggage. See Tr. at 30:1-2 (Hyland). Hyland found three cereal boxes which were unusually heavy. See Tr. at 31:1-36:22 (Hyland). McKenzie denied Hyland's request for consent to search the cereal boxes. See id. Based on his experience, the cereal boxes he found in McKenzie's luggage, and other information obtained during his conversation with McKenzie in the sleeper room, Hyland believed he had probable cause to arrest McKenzie. See Tr. at 131:1-18 (Hyland); United States' Response at 3, filed October 23, 2009 (Doc. 53).

## PROCEDURAL BACKGROUND

McKenzie filed a motion to suppress evidence on the ground that the search of his luggage was not supported by either probable cause or a reasonable suspicion that it contained illegal contraband. See Motion to Suppress Evidence with Supporting Authorities at 1, filed May 14, 2009 (Doc. 32)("Suppression Motion"). The Court set a hearing on McKenzie's motion to suppress for August 10, 2009. See Notice, filed July 20, 2009 (Doc. 41). The Court later granted McKenzie's Unopposed Motion to Continue Suppression Hearing for August 10, 2009, filed July 24, 2009 (Doc. 42), and reset the suppression hearing for August 20, 2009. See Unopposed Order Continuing the Suppression Hearing Current [sic] Set for August 10, 2009, filed July 29, 2009 (Doc. 43).

The Court held the suppression hearing on August 20, 2009. See Clerk's Minutes, filed August 20, 2009 (Doc. 46). Hyland was the only witness to testify at the suppression hearing. See Tr. at 6:22-93:5, 101:3-151:16-17 (Hyland). During the hearing, McKenzie asked the United States to make the ticket agent available for cross-examination. See Tr. at 107:19-108:4 (Padilla). The

United States asked the Court for leave to brief the issue whether McKenzie is entitled to cross-examine the ticket agent.  <u>See</u> Tr. at 108:5-6 (Martinez).  McKenzie agreed that "the body of the law that relates to CIs is the one that the Court would apply in determining whether that person should be produced."  Tr. at 113:8-12 (Padilla).

After Hyland's testimony, McKenzie indicated that he had no further witnesses or evidence he wished to present.  <u>See</u> Tr. at 151:24 (Padilla).  McKenzie asked the Court to keep the hearing open to address the confidential informant issue.  <u>See</u> Tr. at 152:3-8 (Padilla).  Both McKenzie, <u>see</u> Tr. at 153:12-14, and the United States, <u>see</u> Tr. at 153:17-19, indicated that the Court should not rule on the motion to suppress until after it rules on the motion to compel production of witness and documents.  The Court stated it would not rule on the motion to suppress until after ruling on the motion to compel production of witness and documents.  <u>See</u> Tr. at 153:8-22 (Court).

McKenzie filed his Motion to Compel Production of Witnesses and Documents seeking the name of the ticket agent who provided the information to the DEA that led to the initial encounter with, and subsequent arrest of, McKenzie on July 7, 2008, and any agreements between the DEA and Amtrak.  <u>See</u> Motion at 1.  McKenzie argues that the ticket agent is not a confidential informant, but rather should be considered a fellow officer under the collective-knowledge doctrine or fellow-officer rule, and should be available to the defense for examination just as any other officer involved in the investigation would be available, either as a government witness or a witness called by the defense.  <u>See</u> <u>id.</u> ¶ 3, at 3.

## <u>LAW REGARDING CONFIDENTIAL INFORMANTS</u>

The Government has a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."  <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957).  "The purpose of the privilege is the furtherance and

protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."  Id.  "Anonymity of informants encourages communications to law enforcement officers."  Usery v. Local Union 720, Laborers' International Union of North America, AFL-CIO, 547 F.2d 25, 527 (10th Cir. 1977).  See United States v. Brantley, 986 F.2d 379, 383 (10th Cir. 1993)("Nor must the government supply the defendant with information about an informer when the individual introduces suspected traffickers to narcotics agents.");  United States v. Ortiz, 804 F.2d 1161, 1166 (10th Cir. 1986)("We have ruled previously that the government is not required to supply information about an informer to a defendant when the informer merely provides the initial introduction.").  The privilege is not absolute, and where "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause the privilege must give way."  Roviaro, 353 U.S. at 60-61.

The Supreme Court of the United States "has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause," where guilt or innocence is not at stake.  McCray v. Illinois, 386 U.S. 300, 311-312 (1967).  In cases where the legality of a search without a warrant is in issue and the government relies upon the communications of an informer to establish probable cause, "the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication."  Roviaro v. United States, 353 U.S. at 61.

"The defendant has the burden of making a showing that disclosure is required.  Thus, disclosure is not required where the defendant fails to show that the informant's identity is necessary."  B. Bergman & N. Hollander, 3 Wharton's Criminal Evidence § 11:60, at 255-257 (15th

ed. 1999)(citing cases from the United States Courts of Appeal for the Second, Fifth, Eighth, Tenth,

Eleventh and District of Columbia Circuits). In concluding that the defendant seeking disclosure

has the burden of proof, the United States Court of Appeals for the Tenth Circuit stated:

> The disclosure of a confidential informant's identity involves balancing the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense. Roviaro v. United States, 353 U.S. 53, 62 . . . (1957). In making the determination as to whether disclosure is necessary, the court must consider the particular circumstances of the case, including the crime charged, the possible defenses, and the significance of the informer's testimony. Id. "Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure." United States v. Martinez, 979 F.2d 1424, 1429 (10th Cir. 1992). A defendant seeking disclosure has the burden of proof, and we review the district court's decision for an abuse of discretion. Id. at 1426.

United States v. Sinclair, 109 F.3d 1527, 1538 (10th Cir. 1997).

## LAW REGARDING RELEVANT EVIDENCE

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having

any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." As the Tenth Circuit

has recognized, "the threshold for relevance under the Federal Rules of Evidence is not a high one."

United States v. Cerno, 529 F.3d 926, 934 n.5 (10th Cir. 2008). "Evidence which is not relevant is

not admissible," but "[a]ll relevant evidence is admissible, except as otherwise provided by" law.

Fed. R. Evid. 402.

## ANALYSIS

McKenzie seeks an order compelling the United States to identify the ticket agent who sent

to the DEA, by facsimile transmission, the PNR containing information related to McKenzie's travel

itinerary with Amtrak. McKenzie argues that, because Hyland relied solely on the drug-courier

profile for his investigative stop, a decision actually made by the ticket agent who targeted McKenzie, the Court should permit the examination of the actual Amtrak ticket agent to determine his reasons for suspecting that Mr. McKenzie was transporting drugs."  Motion ¶ 7 at 8.  The Court concludes that McKenzie has not met his burden of showing that disclosure of the ticket agent's identity is necessary.  Considering the ticket agent to be an informant, "it is clear that the informant cannot aid the defense," because the informant merely conveyed information that is now available through the investigating DEA officers, "the government's interest in keeping secret the informant's identity [would] prevail over the defendant's asserted right of disclosure."  United States v. Gordon, 173 F.3d 761, 767 (10th Cir. 1999).

McKenzie brings a different approach, however, and argues that the Amtrak ticket agent cannot be described as a confidential informant.  McKenzie contends that the Amtrak agent is essentially taking the place of a DEA agent in that the DEA has trained the Amtrak agent and the agent has provided information that the DEA agents at one time directly obtained themselves.  See Motion at 8-9.  McKenzie further contends that the ticket agent is "standing in for [a] DEA agent and is acting more as a fellow officer, and thus should be available to the defense for examination." Id. at 9.  Hyland testified that the ticket agent does not work for the DEA and is not in law enforcement.  See Tr. at 102:14-16 (Hyland).  McKenzie cites no legal authority for the proposition that a DEA-trained ticket agent who provides information to the DEA is a de facto law enforcement officer, and the Court has found none.  The Court is concerned that, if the Court adopts McKenzie's argument, anytime a police officer trains citizens to be alert to criminal activity and they supply information to the police, they become law enforcement officers rather than a tipster.  The Court does not believe that such training is enough to convert a citizen to a law enforcement officer.  See Callahan v. Millard County, 494 F.3d 891, 897 (10th Cir. 2007)("That a citizen has the power to

arrest does not grant the citizen all the powers and obligations of the police as agents of the state."), rev'd on other grounds, Pearson v. Callahan, 129 S. Ct. 808 (2009).

McKenzie's motion to compel production of the ticket agent is based on McKenzie's contention that Hyland's stop of McKenzie was an investigative stop and not a consensual encounter. See Motion ¶ 6, at 6-7. McKenzie states that it is his position that the law-enforcement officers who approached him had to reasonably suspect that he was transporting drugs before they conducted the investigative stop." See Defendant's Reply to Government's Response to Defendant's Motion to Compel Production of Witness at 9, filed November 6, 2009 (Doc. 54)("Reply"). McKenzie contends that he should have the opportunity to confront the source of the hunch that McKenzie was transporting drugs and challenge the reasonableness of the initial investigatory stop. See Motion ¶ 6, at 7. The United States contends that "Agent Hyland had a consensual encounter with defendant McKenzie." Response at 2. The United States stated: "The probable cause, the reasonable suspicion was based upon what this agent observed [later] in [McKenzie's] cabin." Tr. at 108:21-22. Whether Hyland's initial meeting with McKenzie was an investigative stop or a consensual encounter is an issue in the pending motion to suppress. See Suppression Motion ¶ 1, at 1-2; United States' Response to Motion to Suppress at 10-13, filed June 1, 2009 (Doc. 34). The Court granted McKenzie's request to not rule on the motion to suppress until after ruling on the motion to compel production of witness and documents. See Tr. at 153:8-22 (Court). The Court need not resolve whether Hyland's initial meeting with McKenzie was an investigative stop or consensual encounter before determining whether it should compel the United States to produce the ticket agent.

McKenzie did not meet his burden of showing that disclosure of the ticket agent's identity is necessary to determine whether the initial meeting between Hyland and McKenzie was a

consensual encounter.  McKenzie's argument is based upon his contention that the encounter was an investigative stop which requires reasonable suspicion that he was transporting drugs.  McKenzie seeks to cross-examine the ticket agent only to challenge the reasonableness of the investigatory stop.  See Motion ¶ 6, at 7.  Consensual encounters do not require reasonable suspicion.  See United States v. Drayton, 536 U.S. 194, 201 (2002)("Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage -- provided they do not induce cooperation by coercive means.").  McKenzie makes no showing that disclosure of the ticket agent's identity is necessary to determine whether the initial meeting between Hyland and McKenzie was consensual.

If the initial meeting was an investigative stop, McKenzie has failed to persuade the Court that it should require the disclosure of the ticket agent's identity.  McKenzie contends that the Court should afford him the opportunity to examine the Amtrak agent as it would allow him to examine any law-enforcement officer involved in his arrest, see Reply at 10, and makes the conclusory allegation that the ticket agent was a de facto law-enforcement agent but cites no legal authority to support his contention that the Court should consider the ticket agent a law-enforcement officer rather than a tipster, see Motion ¶ 3, at 3, ¶ 8 at 9; Reply at 10.  See United States v. Zamora, 784 F.2d 1025, 1030 (10th Cir. 1986)("Rovario and its progeny have held that if a confidential informant was only a 'tipster,' and not an active participant in the criminal activity charged, disclosure of the informant's identity is not required.").  If McKenzie's argument is taken to its logical end, all government employees who cooperate with law-enforcement agents would have to be disclosed.  The courts have not gone to the point of classifying all government employees as law enforcement.

McKenzie also requests that the Court order the United States to provide copies of any contracts or memorandums of understandings between Amtrak and the DEA which refer to or

discuss the basis for Amtrak providing information directly to the DEA regarding passengers who fit any of the drug-courier profile characteristics.  See Motion ¶ 9, at 9.  McKenzie's sole reason for requesting this information is because "defense counsel . . . feels such information is not only relevant but due to its nature discoverable."  Id.  The United States asserts that the Memorandum of Understanding ("MOU") is not relevant for the following reasons:

> First, the MOU does not address AMTRAK and its reservations or employees of AMTRAK receiving monetary rewards for providing information to DEA.  Second, the MOU addresses the obligations of the AMTRAK police officer assigned to the DEA task force.  On the date in question, AMTRAK had a liaison officer on the DEA task force.  Also on the date in question, Agent Hyland did not receive information from the AMTRAK liaison officer on the DEA task force.  Instead, Agent Hyland received the PNR information from the confidential informant.

Response to Defendant's Motion to Compel Production of Witnesses and Documents Filed September 11, 2009 at 8-9, filed October 23, 2009 (Doc. 53).  McKenzie does not address the relevance of the documents or give any legal argument in his Reply to support his contention that the Court should compel the United States to produce the requested documents.

     **IT IS ORDERED** that McKenzie's Motion to Compel Production of Witnesses and Documents is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory Fouratt
  United States Attorney
Damon P. Martinez
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Stephen P. McCue
  Federal Public Defender
Alonzo J. Padilla
  Assistant Federal Public Defender
Albuquerque, New Mexico

*Attorneys for the Defendant*