**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                              No. CR 08-1669 JB

RICHARD ANTHONY MCKENZIE,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the United States' Motion in Limine to Prohibit Defendant from Raising Confidential Source/PNR Issue, and to Further Prohibit Proposed Defense Witnesses Testimony at Trial, filed March 28, 2011 (Doc. 121)("Motion").  The Court held a hearing on April 1, 2011.  The primary issues are: (i) whether the Court should enter an order in limine to prohibit Defendant Richard Anthony Mckenzie from raising the issue of the confidential source that supplied his passenger named report ("PNR") to Drug Enforcement Agency ("DEA") Special Agent Mark D. Hyland at trial; (ii) whether the court should prohibit four witnesses that McKenzie has listed from testifying at trial; and (iii) whether the Court should permit McKenzie to examine witnesses if he is dissatisfied with his counsel's examination.  Because the Court has held that the source of McKenzie's PNR is irrelevant to the issues before the Court, because the source is irrelevant to the issues remaining for trial, and because the Court has held that Hyland did not illegally obtain McKenzie's PNR, the Court grants the Plaintiff United States of America's request for an order prohibiting McKenzie from introducing evidence or calling witnesses regarding the confidential informant and the PNR.  The Court will, however, allow McKenzie to test Hyland's

credibility with his prior testimony.  The Court will not order, at this time, that McKenzie is allowed to examine witnesses if he unsatisfied with his counsel's performance, without prejudice to McKenzie renewing his request at trial if he cannot get his counsel to ask questions that he wants asked and that the Court has not clearly precluded.

## FACTUAL BACKGROUND

On July 7, 2008, McKenzie was found in possession of 3.45 gross kilograms of a white powder that tested positive for cocaine and arrested by DEA agents in Albuquerque, New Mexico train station.  The Court previously made factual findings in this matter.  See Memorandum Opinion and Order, filed April 13, 2010 (Doc. 70)("April 13, 2010 MOO"); Memorandum Opinion and Order, filed February 10, 2011 (Doc. 116)("February 10, 2011 MOO")(incorporating and expanding on the findings in the April 13, 2010 MOO).  The Court incorporates those findings by reference. The Court will not restate the facts here.

## PROCEDURAL BACKGROUND

McKenzie is charged by Indictment with one count of possession with intent to distribute 500 grams of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  On May 14, 2009, McKenzie filed a motion to suppress all evidence found as a result of what he considers to be an illegal search.  See Motion to Suppress Evidence with Supporting Authorities, filed May 14, 2009 (Doc. 32).  McKenzie asserted that his encounter with Hyland was not consensual, but was an investigative stop.  The Court relied upon testimony from Hyland at the hearing in denying McKenzie's requested relief.  The Court, after hearing testimony at two separate hearings, denied the motion to suppress, ruling that the encounter was consensual and that McKenzie had given the agent consent to search his luggage where the cocaine was found. See April 13, 2010 MOO at 29.

On May 17, 2010, McKenzie filed his Opposed Motion to Continue Trial Setting; Request for Frank's [sic] Hearing; and Request to Reopen Suppression Motion Hearing, filed May 17, 2010 (Doc. 76)("Franks Motion"), requesting the Court to conduct a <u>Franks</u>[1] hearing, re-open its suppression hearing, and, presumably, re-consider its April 13, 2010 ruling.  McKenzie contended that the Court "may need to . . . conduct[]" a <u>Franks</u> hearing to determine if Hyland provided false or misleading information to the Magistrate Judge who issued the warrant to search the cereal boxes in McKenzie's luggage.  McKenzie further contended that, even if the Court determined that a <u>Franks</u> hearing is not necessary, McKenzie's testimony regarding how the DEA received the PNR is relevant to the determination whether the initial contact with McKenzie was an investigative stop or a consensual encounter.  At the hearing on McKenzie's <u>Franks</u> motion, the Plaintiff United States of America again proposed that the Court conduct an in camera interview of DEA Agent Jarrell Perry -- who is knowledgeable about how the DEA obtained information from AmTrak.  McKenzie's counsel did not object to the Court's in camera review.  See Transcript of Hearing at 27:17-23 (taken December 1, 2010)(Court, Cooper)("December 1, 2010 Tr.")("I don't object to and [sic] in camera review of this individual or probably better still by somebody from Amtrak . . . .").[2] The United States and the Court then examined Perry about the AmTrak ticket agent in camera, outside of McKenzie's and his counsel's presence.  Perry testified that, after proceedings against McKenzie commenced, Perry contacted the person who is most likely the confidential source, and

---

[1] <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978)(stating that a hearing is warranted "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause").

[2] The Court's citations to transcripts of hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

the person most likely to be able to determine who is the confidential source if not this person, and that person is unable to recall details regarding the specific facsimile transmission of McKenzie's PNR.  See December 1, 2010 Tr. at 51:16-52:2, 52:18-25, 54:9-15 (Martinez, Perry); id. at 56:6-10 (Court, Perry).  On February 20, 2011, the Court denied McKenzie's Franks Motion.  See Memorandum Opinion and Order, filed February 20, 2011 (Doc. 116)("February 20, 2011 MOO").

On March 30, 2011, McKenzie filed his Motion to Suppress Evidence Based on Illegal Seizure of Passenger Named Report PNR and to Reconsider, in Part, Factual Findings Relating to the Seizure of the PNR, filed (Doc. 124)("Motion to Suppress").  McKenzie asserted that the Court should suppress evidence against him based on the allegedly illegal seizure of his PNR.  Because McKenzie presented no new factual allegation or legal authority that undermines the Court's decision, and because the Tenth Circuit has held that Amtrak's disclosure of a passenger's PNR to the DEA does not violate the passenger's Fourth Amendment rights, the Court denied McKenzie's Motion to Suppress.  See Memorandum Opinion and Order, filed April 8, 2011 (Doc. 132)("April 8, 2011 MOO").

The United States moves the Court for an order in limine prohibiting McKenzie from raising the issue of the confidential source that supplied his PNR to Hyland at trial and the topic of the PNR, and further prohibiting McKenzie from putting on three witnesses -- Gary Chester, Carlos Herrera, and John Claiborne -- who will testify about these matters.  On March 30, 2011, McKenzie filed his Response to United States' Motion in Limine to Prohibit Defendant from Raising Confidential Source/PNR Issue and to Further Prohibit Proposed Defense Witnesses at Trial, in which he opposes the Motion.  See Doc. 125 ("Response").  McKenzie contends that he should be permitted to call witnesses in support of his contention that the Court should suppress his PNR.

At the April 1, 2011 hearing, McKenzie noted that he also intended to call DEA Agent Perry

to testify about the confidential source/PNR issue.  McKenzie represented that he wanted to litigate the confidential source/PNR issue, and that Chester, Herrera, Claiborne, and Perry would testify about that issue.  He further represented that Chester might provide some historical and background information, and that "all of these witnesses are PNR type witnesses and possibly witnesses who can bring some light with regard to the credibility of Agent Hyland."  Transcript of Hearing at 6:5-18 (taken April 1, 2011)("Tr.")(Court, Cooper).  The United States stated that it intended not to introduce evidence regarding Hyland's investigation before he arrived at the train station.  See Tr. at 7:12-20 (Martinez)("At trial, the United States is going to provide evidence that Agent Hyland walked up to the defendant at the train station and started speaking to him.").  The United States also asserted that it was unnecessary to have the witnesses testify about Hyland's credibility, because his prior sworn statements are admissible, and could be used to impeach him.  See Tr. 10:10-15.  At the hearing, McKenzie requested that, if he is unsatisfied with his counsel's examination of witnesses, he be permitted to examine witnesses.

## ANALYSIS

The United States argues that, because the Court has denied McKenzie's repeated requests that it suppress the evidence against him, and because the confidential source/PNR issue is irrelevant to the matters that will be submitted to the jury -- whether McKenzie possessed a controlled substance with the intent to distribute -- the Court should enter an order in limine prohibiting McKenzie from raising these issues at trial.  The United States further contends that the Court should prohibit McKenzie from putting on Chester, Herrera, Claiborne, and Perry, who were not present at the train station when McKenzie was arrested, and whose only involvement in this matter appears to relate to the confidential source/PNR issue.

McKenzie responds that the Court should deny the Motion.  McKenzie argues that he has

filed a motion to suppress, and he submits that the witnesses on his witness list can substantiate his contention that the PNR was illegally seized in violation of the Fourth Amendment.  McKenzie also asserts that he should therefore be permitted to call these witnesses to impeach Hyland.

The Court has denied McKenzie's Motion to Suppress.  The Court has found that McKenzie's arguments regarding the confidential source/PNR issue are without a sound basis in the law and in the facts of this case.  The Court will therefore grant the United States' request that it prohibit McKenzie from raising the confidential source/PNR issue at trial.  The Court will allow McKenzie to test Hyland's credibility using his past testimony if his testimony at trial is inconsistent with his prior sworn statements.  The Court will not allow McKenzie to examine witnesses if he is unsatisfied with his counsel's performance at this stage of the case, but McKenzie may renew his request at trial in a more concrete setting on a witness-by-witness, question-by-question basis.

## I.      THE COURT WILL NOT ALLOW MCKENZIE TO INTRODUCE EVIDENCE OR WITNESSES REGARDING THE CONFIDENTIAL SOURCE/PNR ISSUE.

The Court has already decided, as a matter of law, that the DEA's search and seizure of McKenzie and his property did not violate McKenzie's Fourth-Amendment rights.  Accordingly, the Court will not allow McKenzie to present evidence about this issue at trial, because it is not material to the issues before the jury and will serve only to create confusion about a legal issue the Court has already decided.  See Fed. R. Evid. 403.

The Court has held that McKenzie's arrest and the search and seizure of his property did not violate his Fourth-Amendment rights.  On May 14, 2009, McKenzie filed a motion to suppress all evidence found as a result of what he considers to be an illegal search.  The Court, after hearing testimony at two separate hearings, denied the motion to suppress, ruling that the encounter was consensual and that McKenzie had given the agent consent to search his luggage where the cocaine

was found.  See April 13, 2010 MOO at 29.  The Court stated in its April 13, 2010 MOO: "The first question, and the one ultimately determinative of the outcome of this case, is whether the initial encounter between McKenzie and Hyland, during which Hyland asked to see McKenzie's ticket and asked to search McKenzie's luggage, was consensual, or, rather, was an investigative detention." April 13, 2010 MOO at 29.  The Court found "that the initial encounter was consensual, and therefore it is irrelevant whether the officers had any basis for the belief, or indeed any belief, that McKenzie was transporting contraband when the encounter started."  April 13, 2010 MOO at 40-41. Because the Court has found the initial search was consensual, how Hyland obtained McKenzie's PNR is not relevant to the issues before the Court.  See April 13, 2010 MOO at 30 ("A consensual encounter, for constitutional purposes, is a non-event; it cannot be a Fourth-Amendment violation." (citing Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir. 2000)).

On May 17, 2010, McKenzie filed his Franks Motion, requesting that the Court conduct a Franks hearing, re-open its suppression hearing, and, presumably, re-consider its April 13, 2010 ruling.  McKenzie contended that the Court "may need to . . . conduct[]" a Franks hearing to determine if Hyland provided false or misleading information to the Magistrate Judge who issued the warrant to search the cereal boxes in McKenzie's luggage.  McKenzie further contended that, even if the Court determined that a Franks hearing is not necessary, Hyland's testimony regarding how the DEA received McKenzie's PNR is relevant to the determination whether the initial contact with McKenzie was an investigative stop or a consensual encounter.  McKenzie contended that Hyland falsely testified about receiving McKenzie's PNR from the AmTrak ticket agent.  Based on that premise, McKenzie asserted that the Court should hold a Franks hearing, reopen its suppression hearing, and reconsider its decision not to suppress the evidence against McKenzie.  On February 20, 2011, after conducting an evidentiary hearing, and carefully considering McKenzie's arguments

and evidence, the Court denied McKenzie's <u>Franks</u> Motion.  The Court found that McKenzie had

not shown that Hyland misled the Court about receiving McKenzie's PNR from an AmTrak ticket

agent and that Hyland had testified truthfully.  The Court further held that neither the probable cause

supporting the Magistrate Judge's decision to issue a warrant to search McKenzie's property nor the

Court's decision not to suppress evidence relied on Hyland's testimony about receiving the PNR via

facsimile transmission from the AmTrak ticket agent, making McKenzie's allegations immaterial

to the Court's Fourth Amendment analysis.

On March 30, 2011, McKenzie filed his Motion to Suppress, again asking the Court to

reconsider its decision not to suppress the evidence against him.  At the April 1, 2011 hearing,

McKenzie made clear that the heart of his argument is that Hyland illegally seized his PNR.  The

Court has concluded that McKenzie's argument is unavailing.  <u>See</u> April 8, 2011 MOO.  The Tenth

Circuit has previously held that Amtrak's disclosure of a passenger's PNR to a DEA agent does not

violate the passenger's Fourth Amendment rights.  <u>See</u> <u>United States v. Jackson</u>, 381 F.3d 984, 989-

90 (10th Cir. 2004).   Moreover, McKenzie has no standing to challenge Hyland's seizure of

Amtrak's PNR for McKenzie, because the Court's "supervisory power does not authorize us to order

suppression of 'otherwise admissible evidence on the ground that it was seized unlawfully from a

third party not before the court.'"   <u>United States v. Moffett</u>, 84 F.3d 1291, 1294 (10th Cir.

1996)(quoting <u>United States v. Payner</u>, 447 U.S. 727, 735 (1980)(holding "respondent lacks standing

under the Fourth Amendment to suppress the documents illegally seized from" foreign bank

officer)).  McKenzie presented no new factual allegation or legal authority that undermines the

Court's decision not to suppress the evidence against him.  The Court therefore denied McKenzie's

Motion to Suppress.

Thus, McKenzie has fully and repeatedly litigated the confidential source/PNR issue.  The

Court has decided as a matter of law that Amtrak's disclosure of McKenzie's PNR to Hyland did not violate McKenzie's Fourth-Amendment rights. Unsatisfied with the Court's decision, McKenzie now seeks to present his Fourth-Amendment argument to the jury. McKenzie asserts:

> McKenzie has filed a Motion to Suppress the PNR [Doc. No. 116]. He submits that the witnesses on his witness list can substantiate his contention that the PNR was illegally seized in violation of the Fourth Amendment. He should therefore be permitted to call these witnesses in support of this claim.

Response ¶¶ 1-3, at 1 (paragraph number omitted). The jury, however, will not decide whether to suppress the evidence against McKenzie or if his Fourth-Amendment rights were violated. In a criminal trial, whether a seizure violated the Fourth Amendment is a question of law for the Court to decide before trial. See Fed. R. Crim. P. 12 ("**Motions That Must Be Made Before Trial**. The following must be raised before trial: . . . a motion to suppress evidence . . . ."); United States v. Fisher, 597 F.3d 1156, 1158 (10th Cir. 2010)("In reviewing the denial of a motion to suppress, 'we view the evidence in the light most favorable to the government and accept the district court's findings of fact unless clearly erroneous.' The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law . . . ." (quoting United States v. Neff, 300 F.3d 1217, 1219 (10th Cir. 2002); citing United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993))). "Evaluation of the credibility of witnesses, the weight to be given the evidence, and inferences to be drawn from the evidence are for the district court." United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). The question whether evidence against McKenzie should be suppressed will therefore not be before the jury.[3] Moreover, whatever probative value testimony and evidence about

---

[3] At trial, the jury will decide whether the United States has shown, beyond a reasonable doubt, that: (i) McKenzie "knowingly or intentionally possessed [cocaine] as charged"; (ii) McKenzie "possessed the substance with the intent to distribute it"; and (iii) "the weight of the [cocaine] defendant possessed was at least [500 grams] as charged." Tenth Circuit Pattern Jury Instructions Criminal 2.85.1, at 303 (Feb. 2006).

this issue may have -- if any -- "is substantially outweighed by the danger of . . . confusion of the issues, . . . misleading the jury, [and] by considerations of undue delay."  Fed. R. Evid. 403. Because the Fourth-Amendment issue will not be before the jury, the Court will prohibit McKenzie from introducing evidence or putting on witnesses to testify about the confidential source/PNR issue. The Court therefore prohibits McKenzie from raising the confidential source/PNR issue at trial.  The Court further prohibits McKenzie from putting on Chester, Herrera, Claiborne, and Perry, whom he intended to have testify primarily about the confidential source/PNR issue.

## II.    THE COURT WILL ALLOW MCKENZIE TO TEST HYLAND'S CREDIBILITY.

The Court will allow McKenzie to test Hyland's credibility with his past testimony.  While the confidential source/PNR issue is not relevant to the issues before the jury, Hyland's credibility is relevant.  McKenzie represented that he intended to call Chester, Herrera, Claiborne, and Perry in part to impeach Hyland.  The Court will not allow McKenzie to call Chester, Herrera, Claiborne, and Perry to impeach Hyland, because the testimony is collateral to the issues at trial and the confusion their testimony would create would substantially outweigh its probative value.  See Fed. R. Evid. 403.  The Court will, however, allow McKenzie to use Hyland's past testimony to impeach him if Hyland's testimony at trial is inconsistent with his past testimony.

At the April 1, 2011 hearing, McKenzie asserted that he wanted "leeway to ask" Hyland about discrepancies in his prior testimony.  After stating that the Court would not allow the confidential source/PNR issue to be litigated in the case, but that it was unconcerned about Hyland's prior testimony being mentioned, the Court asked McKenzie how he intended to proceed:

> THE COURT:    Well Mr. Cooper understanding the guidelines the Court's sort of proposed can you think of the questions you would ask about the PNR confidential informant issues to address Mr. Hyland's correction?

MR. COOPER:          Your Honor, I think that the most ammunition I'm going to have is testimony on one occasion that he received it directly from a confidential source, and then later on he received it from a fax machine, and then later on he received it in an envelope.  And I think those inconsistent statements I think I need to ask him.  I need the leeway to ask him about those questions.

THE COURT:           Well you made these statements before and then you changed your story?  Yes I'm inclined to allow that, so that will give you some guidance and then . . . I don't see the issue being much -- I don't see any more to bring out.

MR. MARTINEZ:        So, Your Honor, if I ask the question, "did you receive a PNR from a confidential source," "yes," "what is a PNR what did you do with that information?"  The Court doesn't view that as opening the door to the other bigger issue that we talked about in the motion in limine.

THE COURT:           I don't see it -- I don't see us needing to go much further than that.

MR. MARTINEZ:        Thank you, your Honor.

THE COURT:           Any elaboration on that Mr. Cooper?

MR. COOPER:          Your Honor, I don't believe that that does open the door.  I believe that I ought to have the right however to question him regarding the mistakes.

THE COURT:           I'm pretty much giving it to you and he's pretty much going to condition the witness.

MR. COOPER:          Depending on how he answers the questions about the PNR I may have some additional follow up and maybe clean that stuff up.

THE COURT:           Sure.

MR. COOPER:          I don't want to ask -- or I don't intend to ask: "isn't it true that Gary Chester said he d[id] not send this to you?"  We've already litigated that.  I get it.

Tr. at 34:12-35:23.  The United States appears to concede that Hyland testified inconsistently:

> Now, Your Honor, in candor to the Court, my memory is, is that there was a mistake and we clarified it in the last hearing. Agent Hyland I think originally testified that he took something from the fax machine. I think upon further thought or reflection on it he remembered that he took it from the plastic envelope.

Tr. at 10:20-25 (Martinez).

Notwithstanding the Court's statements at the hearing, the Court subsequently found that "a careful review of Hyland's testimony reveals that, while Hyland recalled additional details about the mundane event of receiving a facsimile transmission over time, his testimony is not inconsistent and does not contain discrepancies." April 8, 2011 MOO at 18. In the Court's April 8, 2011 MOO, the Court, after carefully reviewing the transcripts of the prior hearings, found no instance in which Hyland stated that he "took something from the fax machine":

> [A] careful review of Hyland's testimony reveals that, while Hyland recalled additional details about the mundane event of receiving a facsimile transmission over time, his testimony is not inconsistent and does not contain discrepancies. At the August 20, 2009 hearing, Hyland testified the facsimile transmission was "sent to us" -- he did not testify that he took the transmission from off the apparatus or that he did not take it from a envelope on the wall. At the February 18, 2010 hearing, Hyland testified that the facsimile transmission was not specifically directed to him. See [Transcript of Hearing at 4:15-19 (taken February 18, 2010)]("Q. Any way to begin with, was that fax directed specifically to you? I don't think we covered that in the last hearing? A. No." (Padilla, Hyland)). Hyland did not volunteer and McKenzie's counsel did not inquire whether Hyland took the facsimile transmission directly from the machine or in another fashion. At the December 1, 2010 hearing, when asked about the details of the facsimile transmission, Hyland provided additional detail on how the PNR was processed within the Group One Interdiction Group. The Court finds no inconsistency in Hyland's statement that McKenzie's PNR was sent by facsimile transmission to the Group One Interdiction Group, but not specifically to him, and his statement that the PNR was moved from the Group One Interdiction Group's facsimile transmission apparatus and placed in an envelope specific to the number four train, from which Hyland retrieved it. . . . The Court, after a careful review of the record, finds no instance in which Hyland states he took McKenzie's PNR from directly from the facsimile transmission apparatus.

April 8, 2010 MOO at 18-19. If the Court is mistaken in its review of the record, McKenzie may direct the Court to the discrepancies in Hyland's testimony and ask the Court to reconsider its

evaluation of the evidence.  Because the Court finds no discrepancies in Hyland's prior testimony

about receiving McKenzie's PNR, the Court will not allow McKenzie to introduce into the record

as substantive evidence Hyland's past testimony about receiving McKenzie's PNR; McKenzie may

only use the evidence to attempt to impeach him if he testifies inconsistently at trial.

## III.   THE COURT WILL NOT ALLOW MCKENZIE AT THIS STAGE TO EXAMINE WITNESSES IF HE IS UNSATISFIED WITH HIS COUNSEL'S EXAMINATION.

At the April 1, 2011 hearing, McKenzie requested that the Court allow him to examine

witnesses is he is unsatisfied with his counsel's examination.  McKenzie has a constitutional right

to represent himself.  He is not, however, representing himself.  Rather, he is presently represented

by counsel.  McKenzie's request is not that he be allowed to proceed pro se; he requests hybrid

representation "in which defendant can question the witnesses while continuing to retain counsel."

United States v. Callwood, 66 F.3d 1110, 1114 (10th Cir. 1995).  McKenzie has no right to hybrid

representation, and the Court denies his request at this stage in the proceeding.

In Faretta v. California, 422 U.S. 806 (1975), the Supreme Court of the United States

addressed the question

> whether a defendant in a state criminal trial has a constitutional right to proceed
> without counsel when he voluntarily and intelligently elects to do so.  Stated another
> way, the question [wa]s whether a State may constitutionally hale a person into its
> criminal courts and there force a lawyer upon him, even when he insists that he
> wants to conduct his own defense.

422 U.S. at 807.  The Supreme Court "concluded that a State may not constitutionally do so."  422

U.S. at 807.  In a footnote, the Supreme Court stated in dicta that "a State may -- even over objection

by the accused -- appoint a 'standby counsel' to aid the accused if and when the accused requests

help, and to be available to represent the accused in the event that termination of the defendant's

self-representation is necessary."  422 U.S. at 834 n.46 (citations omitted).

In <u>United States v. Hill</u>, 526 F.2d 1019 (10th Cir.1975), <u>cert. denied</u>, 425 U.S. 940 (1976), the Tenth Circuit explained the import of <u>Faretta v. California</u>, holding that it did not establish a right of hybrid representation:

> Prior to <u>Faretta</u>, courts had stated that a party had a right to represent himself or to be represented by counsel but did not have a right to hybrid representation. <u>Lee v. Alabama</u>, 406 F.2d 466 (5th Cir. 1968), <u>cert. denied</u>, 395 U.S. 927 . . . (1969); <u>Brasier v. Jeary</u>, 256 F.2d 474 (8th Cir.), <u>cert. denied</u>, 358 U.S. 867 . . . (1958) (a civil case); <u>Duke v. United States</u>, 255 F.2d 721 (9th Cir.), <u>cert. denied</u>, 357 U.S. 920 . . . (1958). <u>See also</u> <u>United States v. Dellinger</u>, 472 F.2d 340 (7th Cir. 1972), <u>cert. denied</u>, 410 U.S. 970 . . . (1973); <u>United States v. Conder</u>, 423 F.2d 904 (6th Cir.), <u>cert. denied</u>, 400 U.S. 958 . . . (1970); <u>Shelton v. United States</u>, 205 F.2d 806 (5th Cir.), <u>appeal dismissed</u>, 346 U.S. 892 . . . (1953). Since <u>Faretta</u>, at least one district court has determined that a criminal defendant already represented by counsel has no right to act as her own co-counsel. <u>United States v. Swinton</u>, 400 F. Supp. 805 (S.D.N.Y. 1975). These decisions do not foreclose a trial judge from allowing hybrid representation in appropriate cases; rather, they indicate no right to hybrid representation exists. <u>Brasier v. Jeary</u>, <u>supra</u>; <u>United States v. Swinton</u>, <u>supra</u>. Furthermore, we see no reason to distinguish between this case where retained counsel is involved in the request for hybrid representation and cases where appointed counsel is involved in such requests. <u>See</u> <u>Duke v. United States</u>, <u>supra</u>.

> We believe <u>Faretta</u> does not alter the established rules concerning hybrid representation. As noted in <u>Swinton</u>,

>> <u>Faretta</u> ratified a consensus within the federal judiciary favoring a constitutional right to pro se status; that consensus has existed side by side with another finding that a defendant's appearance as co-counsel lies within the discretion of the trial court.

> The Sixth Amendment does not give any indication that hybrid representation is a right of constitutional dimensions. Title 28 U.S.C. § 1654 is written in the disjunctive -- 'parties may . . . conduct their own cases personally or by counsel . . . .' Thus no statutory right of hybrid representation is accorded. Finally, although not raised by appellant, we cannot say the trial court abused its discretion in denying hybrid representation in this case. The trial court did not err in denying appellant's request(s) for hybrid representation.

526 F.2d at 1024-25 (alterations in original).

In <u>United States v. Callwood</u>, the Tenth Circuit held that there is no right -- constitutional or statutory -- to hybrid representation. The defendant in that case "contend[ed] that the district

court erroneously refused to recognize his right to self-representation." 66 F.3d at 1113. The Tenth

Circuit noted:

> In this case, defendant never made an unequivocal request for self-representation
> before the court. At trial, defendant raised a number of complaints concerning his
> counsel. Defendant's main grievance was that counsel was not asking witnesses the
> questions that defendant wanted asked. He therefore informed the court he "would
> prefer for [counsel] not to represent [defendant] or at least the right to question the
> [witness himself]." He stated a number of times that he did not believe he was
> receiving "proper representation."

66 F.3d at 1114 (alterations in original). The Tenth Circuit found that "[t]hese statements do not

qualify as an unequivocal request for self-representation," and "[a]t most, defendant requested the

right to cross-examine the witnesses." 66 F.3d at 1114. The Tenth Circuit held:

> Of course, there is no right to a "hybrid" representation in which defendant can
> question the witnesses while continuing to retain counsel. See [United States v.
> McKinley, 58 F.3d 1475, 1480-81 (10th Cir. 1995)]. Defendant never made any
> other statement regarding his desire for self-representation. Accordingly, we hold
> that the district court did not err when it did not substitute defendant as counsel in
> his case.

66 F.3d at 1114. Thus, McKenzie has no right to hybrid representation. See McKaskle v. Wiggins,

465 U.S. 168, 183 (1984)("Faretta does not require a trial judge to permit 'hybrid' representation

of the type Wiggins was actually allowed."); United States v. McKinley, 58 F.3d at 1480 ("[I]t is

certainly true that there is no constitutional right to a hybrid form of representation . . . ." (citing

United States v. Bennett, 539 F.2d 45, 49 (10th Cir.), cert. denied, 429 U.S. 925 (1976)); Church v.

Sullivan, 942 F.2d 1501, 1514 (10th Cir. 1991)("While Church 'had a right to conduct his own

defense under Faretta v. California, 422 U.S. 806 . . . (1975), he had no right to some sort of

"hybrid" representation where he acted as co-counsel.'" (citations omitted)); United States v. Treff,

924 F.2d 975, 979 & n.6 (10th Cir.)(finding no error in trial court's refusal to allow represented

defendant to cross-examine witnesses, stating "a defendant has no right to hybrid representation and

-15-

a request to proceed in such a manner is not deemed an election to proceed pro se"), <u>cert. denied</u>, 500 U.S. 958 (1991); <u>United States v. Lucas</u>, 619 F.2d 870, 871 (10th Cir. 1980)("The trial court certainly has discretion to permit a true hybrid representation if counsel is willing.  However, as <u>Hill</u> points out, the trial court's determination on that issue will not be overturned absent an abuse of discretion."  (citing <u>United States v. Hill</u>, 526 F.2d at 1023-25)).  <u>Cf.</u> <u>United States v. Padilla</u>, 819 F.2d 952, 959 (10th Cir. 1987)("We also note that once a defendant has declared his desire to proceed pro se, appointment of standby counsel is a preferred, though not mandatory, practice.").

McKenzie directs the Court to the United States Court of Appeals for the D.C. Circuit's opinion in <u>United States v. Leggett</u>, 81 F.3d 220 (D.C. Cir. 1996).  In that case, the D.C. Circuit found it was not an abuse of discretion for the trial court to allow a defendant to engage in hybrid representation, and that the trial court was not required to caution the defendant about dangers and disadvantages of self-representation.   At trial, the defendant, who was indicted for bribery conspiracy, 18 U.S.C. § 371, and bribery, 18 U.S.C. § 201(b)(2), in connection with a three-year Department of Justice maintenance contract, complained primarily of his counsel's ability to address technical matters.

> The district court then advised Leggett of his constitutional right to represent himself, with or without his counsel as his standby adviser with Leggett taking the lead.  The court recommended against either course as "ill advised," and urged Leggett to work with his counsel.  However, the court made clear that counsel would not continue to represent him over his objection.  Leggett informed the court that he was "not interested in representing [himself]" and was "not interested in taking the lead," but rather "want[ed] clarification as to whether" he could "interject certain questions" of a technical nature if his counsel were not well-informed enough to ask them.  The district court stated that he could but urged Leggett not to do so in front of the jury, but rather, out of the presence of the jury, to ask his counsel to ask them or bring them to the bench.  The court explained that the suggested procedure would "work better with the jury" and give counsel a chance to advise Leggett whether it would be in his interest to ask a particular question, while preserving Leggett's ability to pose the question through the court should he persist in asking it against counsel's advice.  The court reminded Leggett of the "trouble" that had resulted when

counsel acceded to Leggett's insistence on a line of questioning earlier in the trial.

The trial then recommenced, and after the morning session was completed, the court held an ex parte conference with Leggett and his counsel to assess the arrangement. The court advised counsel of his continuing responsibility to exercise his best judgment in advising Leggett whether to ask particular questions, observing that "it's going to be difficult for any attorney with this particular client." Counsel assured the court that he understood his responsibility. Leggett responded by stating that he, too, wanted counsel to exercise his best judgment in his (Leggett's) interest, not only in evaluating Leggett's proposed questions, but also in asking the questions that counsel thought needed to be asked. This continued to be Leggett's position throughout the trial.

Still later in the trial, after several other government witnesses had corroborated Lewis' testimony, Leggett informed the district court that "there [we]re so many things that were not addressed that [he] wanted to see addressed," that he felt "obligated" to question witnesses personally. The court advised the jury of the procedure to be followed, and Leggett cross-examined three government witnesses. Later he posed questions to two witnesses that he called in his defense and made a closing argument to the jury following the closing argument of his counsel.

81 F.3d at 225-26. On appeal, the defendant argued "that the district court erred in allowing him

to proceed pro se without first determining that he had knowingly and willingly waived his right to

counsel." 81 F.3d at 222. The D.C. Circuit held that the defendant's "claim misstates the trial

record, which shows that Leggett did not proceed pro se but merely sought and received the court's

permission to supplement his counsel's examination and argument." 81 F.3d at 222. The D.C.

Circuit stated that "[t]he principal issue in this appeal is whether the hybrid form of representation

that the district court permitted at trial denied Leggett of protections to which he was entitled under

the Sixth Amendment." 81 F.3d at 222. The D.C. Circuit held that "the district court was not

required by the Sixth Amendment to caution Leggett about the 'dangers and disadvantages of

self-representation.'" 81 F.3d at 222 (quoting Faretta v. California, 422 U.S. at 835). The D.C.

Circuit further found that "the record show[ed] that the hybrid procedure allowed by the district

court responded to Leggett's concerns and to his stated preference that he be allowed to supplement

his counsel's questions and argument," and "[t]he district court's accommodation of Leggett's request

for a hybrid form of representation reflects a careful balancing of interests at stake":

> The court granted Leggett's request to participate personally only after advising him
> of his options and ascertaining his unambiguous rejection of a desire to represent
> himself.  The record makes clear that Leggett understood his options and was
> articulate as well as persistent about the manner in which he wanted to proceed at
> trial.  When the court's entreaties to work exclusively through counsel were rebuffed,
> the court advised Leggett of how to avoid prejudice to himself.  Neither the court nor
> counsel could persuade him of the pointlessness of the questions or the irrelevance
> of areas that he wished to pursue.  The court, moreover, took upon itself to ensure
> that Leggett would have the opportunity to present the evidence that he wanted to
> present.  Before granting Leggett's request, however, the court also determined that
> counsel was performing responsibly in his client's best interests.  In that manner, the
> court afforded Leggett the benefit of the advice of his counsel as well as the court.
> Throughout the trial thereafter, the court also took steps to protect against prejudice
> to Leggett, including advice to the jury of the procedures that would be followed,
> thereby giving the court's imprimatur to an unfamiliar role for a defendant in a
> trial. . . .  We find no prejudice to Leggett as a result of the hybrid representation that
> he sought and received, and hence we find no abuse of discretion by the district
> court.

81 F.3d at 226.  Thus, United States v. Leggett accords with the Tenth Circuit's precedent, which

provides that allowing a defendant hybrid representation is within a court's discretion.

Whether to allow McKenzie to examine witnesses is within the Court's discretion.[4]  See

---

[4] The result is the same if the Court considers McKenzie's request under the Confrontation
Clause.  The Sixth Amendment's Confrontation Clause states: "In all criminal prosecutions, the
accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const.
amend. VI.  "The Clause provides two types of protections for defendants, the right physically to
face those who testify against him and the right of cross-examination -- 'a primary interest of the
[Clause].'"  United States v. Begay, 937 F.2d 515, 520 (10th Cir. 1991)(quoting Kentucky v. Stincer,
482 U.S. 730, 736 (1987)).  "The Supreme Court has long held that the rights to confront and
cross-examine witnesses and to call witnesses in one's behalf are essential to due process."  United
States v. Begay, 937 F.2d 515, 520 (citing Chambers v. Mississippi, 410 U.S. 284, 294 (1973)).
Indeed, the Supreme Court has emphasized that cross-examination "is critical for ensuring the
integrity of the factfinding process," and "is the principal means by which the believability of a
witness and the truth of his testimony are tested."  Kentucky v. Stincer, 482 U.S. 730, 736 (1987).

The bloodline of this venerated right is long, and reaches into antiquity.  See Richard
D. Friedman, Confrontation: The Search for Basic Principles, 86 GEO. L.J. 1011,

_____

1022-23 (1998) ("We are used to the idea that witnesses testify under oath in an open proceeding in the presence of the accused, 'face-to-face.' This was the practice of the ancient Hebrews and Romans, and for centuries it has been the English way."). When the Framers sought to protect this right, they were particularly concerned about the 16th and 17th century practice of trial by affidavit in some of the English courts. See White v. Illinois, 502 U.S. 346, 361 (1992) (Thomas, J., concurring in part and concurring in the judgment) (citing the trial of Sir Walter Raleigh on charges of treason, in which the primary evidence against him was a confession of an alleged co-conspirator that was repudiated before trial and probably obtained by torture, as "a well-known example of this feature of English criminal procedure" and observing that "[a]pparently in response to such abuses, a common-law right of confrontation began to develop in England during the late 16th and early 17th centuries"); Friedman, 86 GEO. L.J. at 1024 (concluding that "beginning even before the middle of the sixteenth century, we find repeated demands by treason defendants that their accusers be brought 'face-to-face,' and also repeated statutory support for this position. By the middle of the seventeenth century, this position, and the accused's right to examine the witnesses, had prevailed."). The Clause provides defendants with both "the right to face physically" the government's witnesses and "the right of cross-examination." United States v. Begay, 937 F.2d 515, 520 (10th Cir. 1991).

United States v. Kaufman, 546 F.3d 1242, 1252-53 (10th Cir. 2008).

While a defendant has a right to confront and cross-examine witnesses, a defendant does not have the right to examine a witness in any fashion he or she pleases. See United States v. Maxwell, 579 F.3d 1282, 1296 (11th Cir. 2009)("[T]he Sixth Amendment does not require unlimited inquiry into the potential bias of a witness." (quoting United States v. De Parias, 805 F.2d 1447, 1452 (11th Cir. 1986)). Cf. Wrotten v. New York, 130 S. Ct. 2520, 2520 (2010)("'[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial,' but 'only where denial of such confrontation is necessary to further an important public policy.'" (quoting Maryland v. Craig, 497 U.S. 836, 850 (1990))). In Maryland v. Craig, 497 U.S. 836 (1990), the Supreme Court held that the confrontation clause did not categorically prohibit a child witness in a child abuse case from testifying against the defendant at trial, outside of the defendant's physical presence, via one-way closed circuit television. The Supreme Court stated:

Although face-to-face confrontation forms "the core of the values furthered by the Confrontation Clause," [California v. Green, 399 U.S. 149, 157 (1970)], we have nevertheless recognized that it is not the *sine qua non* of the confrontation right. See Delaware v. Fensterer, 474 U.S. 15, 22 . . . (1985) (per curiam) ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony"); [Ohio v. Roberts, 448 U.S. 56, 69 (1980)] (oath, cross-examination, and demeanor provide

-19-

"all that the Sixth Amendment demands: 'substantial compliance with the purposes behind the confrontation requirement'") (quoting <u>Green</u>, <u>supra</u>, 399 U.S., at 166 . . . ); <u>see also</u> <u>Stincer</u>, 482 U.S. at 739-744 . . . (confrontation right not violated by exclusion of defendant from competency hearing of child witnesses, where defendant had opportunity for full and effective cross-examination at trial); <u>Davis v. Alaska</u>, 415 U.S. 308, 315-316 . . . (1974); <u>Douglas v. Alabama</u>, 380 U.S. 415, 418 . . . (1965); 5 J. Wigmore, Evidence § 1395, p. 150 (J. Chadbourn rev. 1974).

497 U.S. at 847 (alterations in original).  In <u>United States v. Maxwell</u>, the United States Court of Appeals for the Eleventh Circuit stated:

> Thus, "[t]he test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." [<u>United States v. Garcia</u>, 13 F.3d 1464, 1469 (11th Cir. 1994)]; [<u>Baptista-Rodriguez</u>, 17 F.3d 1354, 1371 (11th Cir. 1994)] ("A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable.").  Put another way:
>
>> [A] defendant's sixth amendment rights are not infringed where cross-examination of a prosecution witness is limited by the trial judge, as long as two conditions are met.  First, the jury, through the cross-examination that is permitted, must be exposed to facts sufficient for it to draw inferences relating to the reliability of that witness.  And second, the cross-examination conducted by defense counsel must enable him to make a record from which he could argue why the witness might have been biased.
>
> <u>United States v. Van Dorn</u>, 925 F.2d 1331, 1335 (11th Cir.1991) (internal citations omitted).

579 F.3d at 1296.  <u>See</u> <u>United States v. Williams</u>, 291 F.3d 1180, 1191 (9th Cir. 2002)(observing that the right to cross-examination "is satisfied when the defendant had a full and fair opportunity to probe any inconsistencies in the witness' statements."  (citation omitted)).

Under the Confrontation Clause, the Court has discretion whether to allow McKenzie to examine witnesses.  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986).  In <u>United States v. Wilcox</u>, 631 F.3d 740 (5th Cir. 2011), the United States Court of Appeals for the Fifth Circuit rejected a defendant's contention "that the district court improperly limited his ability

to cross-examine" a witness, because "the district court's instruction to 'move-on' precluded his ability to properly explore any inconsistency" in the witness's testimony.  631 F.3d at 749.  The Fifth Circuit noted:

> "A defendant's right to cross-examine witnesses against him is a constitutional right secured by the Confrontation Clause of the Sixth Amendment."  United States v. Davis, 393 F.3d 540, 548 (5th Cir. 2004) (citing United States v. Mayer, 556 F.2d 245, 248 (5th Cir. 1977)).  It thus follows that a judge's discretionary authority "comes into play only after there has been permitted as a matter of right sufficient cross examination to satisfy the Sixth Amendment."  United States v. Restivo, 8 F.3d 274, 278 (5th Cir. 1993) (internal citations and quotations omitted).  The Confrontation Clause is satisfied when defense counsel has been allowed to expose the jury to facts from which the jury could appropriately draw inferences relating to the reliability of the witness.  Id.  To demonstrate abuse of discretion, the defendant must show that the limitation was clearly prejudicial.  Id.  Put differently, a defendant must show that a reasonable jury might have had a significantly different impression of witness credibility if defense counsel had been allowed to pursue the questioning.  United States v. Maceo, 947 F.2d 1191, 1200 (5th Cir. 1991).

631 F.3d at 749-50 (emphasis added).  See Saiz v. Ortiz, 392 F.3d 1166, (10th Cir. 2004)("[T]he trial court's exercise of its 'wide latitude to place reasonable limits on cross-examination' based upon concerns about confusion of issues is not contrary to or an unreasonable application of the standards pertinent to the Sixth Amendment right to cross-examination articulated in Arsdall, 475 U.S. at 679 . . . ."  (citations omitted)); United States v. Rosario Fuentez, 231 F.3d 700, 704 (10th Cir. 2000)("[M]erely limiting the scope of cross-examination is a matter well within the trial judge's discretion and such an error 'will not lead to reversal unless an abuse of discretion, clearly prejudicial to the defendant, is shown.'" (quoting United States v. Valentine, 706 F.2d 282, 288 (10th Cir. 1983)); United States v. Falcon, 766 F.2d 1469, 1478 (10th Cir. 1985)(holding that the trial court "did not abuse its broad discretion in limiting the scope of cross-examination," where questioning was limited "only when the questioning became repetitive).

The Court has found no case in which a Court allowed a defendant to examine witnesses based on the defendant's Confrontation-Clause rights.  Additionally, McKenzie cannot show before trial that his counsel is unable to adequately examine witnesses, or that his counsel's examination of witnesses will not satisfy his rights under the Confrontation Clause.  See Maryland v. Craig, 497 U.S. 836 ("[O]ath, cross-examination, and demeanor provide 'all that the Sixth Amendment demands: "substantial compliance with the purposes behind the confrontation requirement."'" (quoting Ohio v. Roberts, 448 U.S. at 69)); Delaware v. Fensterer, 474 U.S. at 22 ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony").  Because his request is not compelled by the Sixth Amendment, McKenzie's request to be allowed to examine witnesses therefore falls within the court's discretion.  States v. Wilcox, 631 F.3d 750 ("[A] judge's discretionary authority 'comes into play only after

United States v. Lucas, 619 F.2d at 871; United States v. Hill, 526 F.2d at 1025.  The Court is not inclined to allow McKenzie to examine witnesses.  "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts."  Faretta v. California, 422 U.S. at 834.  The Court finds no reasons to expect that McKenzie's counsel's representation of McKenzie will be inadequate.  McKenzie's counsel is competent and dutiful in advancing relaying McKenzie's agreements -- regardless of their merit. He is also faithful in relaying McKenzie's concerns.  Moreover, the Court believes that allowing McKenzie to examine witnesses may confuse the jury, who will be uncertain why both McKenzie and his counsel are questioning witnesses.  The Court is also concerned that McKenzie's questions may be duplicative, or tread into territory the Court has barred McKenzie from entering, such as the confidential source/PNR issue.  The Court therefore declines to exercise its discretion to permit hybrid representation at this time.  The Court thinks the better path is for McKenzie to discuss with his counsel before trial what information he hopes to obtain from witnesses, and then to confer with his counsel at trial if he believes that his counsel has not adequately examined a witness.

While McKenzie has no right, constitutional or statutory, to enjoy hybrid representation, the Court will deny his request without prejudice to his renewing his request at trial.  The Court is skeptical that McKenzie will want to question every witness, but there may be a witness left whom he wants question.  He should first ask his attorney to ask the questions. If his attorney refuses, McKenzie can raise the issue with the Court.  If, however, McKenzie's counsel is willing to ask McKenzie's questions, then there is no need for him to ask them; typically, a lawyer asks questions

_____

there has been permitted as a matter of right sufficient cross examination to satisfy the Sixth Amendment.'" (citations omitted)).  McKenzie, thus, does not have a right under the Confrontation Clause to examine witnesses if he is unsatisfied with his counsel's examination.

better than non-lawyers, and McKenzie should not insist on the opportunity to do his own questioning unless his counsel refuses to ask certain questions.

**IT IS ORDERED** that: (i) the United States' Motion in Limine to Prohibit Defendant from Raising Confidential Source/PNR Issue, and to Further Prohibit Proposed Defense Witnesses Testimony at Trial, filed March 28, 2011 (Doc. 121), is granted; and (ii) Defendant Richard Anthony McKenzie's request for hybrid representation is denied, without prejudice to his renewing his request at trial on a witness-by-witness, question-by-question basis, in a more concrete setting.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Damon P. Martinez
Samuel A. Hurtado
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Robert R. Cooper
Albuquerque, New Mexico

    *Attorney for the Defendant*